**58**

STATE of Missouri, Respondent,

v.

Jack Lee HUNTER, Appellant.

No. KCD 28144.

Missouri Court of Appeals,
Kansas City District.

Nov. 4, 1976.

Motion for Rehearing and/or Transfer
Denied Nov. 29, 1976.

Motion to Transfer Denied Jan. 10, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

Appellant was convicted of the crime of forgery, possession with intent to utter, by the verdict of a jury. Upon a finding of a prior offense, as pleaded, appellant was sentenced by the court as a second offender to 8 years imprisonment in the Department of Corrections.

Urging reversal, appellant presents the single point that the trial court erred in limiting the cross-examination of state's witness, Sherry Shanks, a bank teller, as to her possible motivation for testifying (in identifying appellant as the person who attempted to pass the check). It is claimed that the cross-examination was relevant to the witness' possible bias and credibility. From the offer of proof, it is argued that Sherry would testify that she felt compelled to testify; that her fear of losing her job would be a powerful incentive for her identification; and that the jury was entitled to know her motives for testifying.

The forgery in question was of a check stolen from the Southeast Medical Clinic on Swope Parkway in Kansas City. Sherry Shanks was a teller at the Columbia Union National Bank on March 13, 1975, when appellant, who was identified by Sherry in court, drove up to the drive-in window, and inserted the check in the drawer. The check was endorsed "Howard Mayo", and Sherry ascertained from the account number on the check that that person did have an account at Columbia Union. She then compared the endorsement with the bank cards of signatures and they did not match.

She obtained an opinion from her superior that the signatures did not match, and then went back and advised appellant that they did not match. Appellant was asked by Sherry if he had any further identification and he told her he did not and something to the effect that it was at home, and then he told her he would come inside. Appellant then drove away, and as he did so, Sherry wrote down the type of car he was driving and its license number.

The ruling of the trial court, contended to be error in limiting the cross-examination, arose in this manner: It was developed that Sherry had worked for the Columbia Union since September, 1974; that she had worked for the Metcalf State Bank over in Kansas; and for K Mart where she accepted checks. She had made three identifications before. "Q And one was at K Mart, is that right? A Yes. Q And I believe that one— MR. WELCH: Your Honor, I object. I think he is going very far afield from the issue at hand here today. THE COURT: What is the purpose? * * * MR. ROTH: Your Honor, I think it's necessary to examine this witness to find out if, in fact, she is a credible witness since she has made identifications on prior incidents, three of which never went to court and the other one we don't know what happened to it, and I talked to her on an earlier occasion and she has told me that it's possible that she could lose her job as a teller if you accept too many bad checks as a teller. She has known a person that has happened to, and I feel it's completely relevant and goes to the credibility of this witness. MR. WELCH: Your Honor, it has no relevance at all. This girl has no control over whether a case goes to court or not. She is only a witness. MR. ROTH: I am not concerned about whether she has any control over it or not. My concern is to show that this person has at one time or the other made identifications— THE COURT: You have already shown that. MR. ROTH: That's correct. Well, I mean I have to go further than that. I mean I have to ask this witness what the bank's policy is on this, and I think it is— THE COURT: What the bank's policy is? MR. ROTH: Your Honor,

it's a very relevant issue as to the credibility of this witness. In other words, she might feel pressured to come in here and make an identification of the defendant. It's relevant as to the credibility of this witness' testimony since, in fact, it is bank policy to let tellers go, they are fired from their jobs if they accept too many bad checks. And I am trying to bring out the fact that this girl might be under some duress to make an identification. THE COURT: I will sustain the objection. I think it is too far afield. I don't think it has anything directly to do with her credibility. MR. LARSON: May we consider the statements we made here as a tentative offer of proof to show the line of questioning we wanted to pursue before Mr. Welch made an objection, your Honor? THE COURT: Yes."

The question sought to be asked the witness bore upon her credibility which is not of a collateral nature. 98 C.J.S. Witnesses § 559e, p. 501. Here, witness, Sherry, the bank teller, was the sole one to connect appellant to the crime with which he was charged. If she were under a compulsion to testify and make an in-court identification of appellant in fear that she would lose her job, then the jury was entitled to know it. Although the trial court has much discretion in limiting the scope of cross-examination, especially as to collateral matters, *State v. Johnson*, 486 S.W.2d 491 (Mo.1972); *State v. Martin*, 530 S.W.2d 447 (Mo.App.1975), there is a corollary rule that great latitude should be allowed on cross-examination of a witness in a criminal case. *State v. Albritton*, 328 Mo. 349, 40 S.W.2d 676 (1931); *State v. Thompson*, 280 S.W.2d 838 (Mo.1955). In *State v. Summers*, 506 S.W.2d 67, 73 (Mo.App.1974), it was said, "[M]atters affecting the credibility of witnesses are always relevant and material * * *." And, "[13–15] The wide discretion possessed by the trial court to fix the outer perimeter of cross-examination (citing cases), should never be permitted to insulate error arising from undue restriction of the right of cross-examination as to rele-

vant and material matters. * * * The Supreme Court of this state has repeatedly held that undue circumscription of an accused's right of cross-examination as to relevant and material matters constitutes error. (Citing cases.)" The matter of a witness' motives in testifying is covered in 81 Am.Jur.2d Witnesses, § 560, p. 561: "In criminal cases, it is widely recognized that counsel for the accused has the right to cross-examine witnesses for the prosecution for the purpose of showing their motives in testifying and that considerable latitude in such respect should be allowed. * * * It is also generally held or recognized that counsel for the accused has the right, and that it may constitute prejudicial error to deny or unduly restrict that right, to cross-examine a witness for the prosecution as to the following, among others, motives for the testimony given by the witness; the witness' expectation or hope of monetary or other financial gain, *fear, intimidation,* or *duress* ; revenge, saving or shielding himself or some other person; or friendship or affection for the victim of the crime." (Italics added.) For examples of various types of cases in which cross-examination as to motives of witnesses were in issue, see the extensive Anno. 62 A.L.R.2d 610. In the situation presented it was prejudicial error to limit the cross-examination of the witness as to matters which might bear upon her credibility.

The judgment is reversed and the case is remanded for new trial.

All concur.